Case 1:21-mj-01627-TMD   Document 3   Filed 06/15/21   Page 1 of 10

FILED ___ ENTERED
____ LOGGED _____ RECEIVED

2:49 pm, Jun 15 2021
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| IN THE MATTER OF THE SEARCH OF TWO U.S. POSTAL SERVICE PARCELS LOCATED AT THE MARYLAND STATE POLICE BARRACK HAGERSTOWN, MARYLAND | Case No. 1:21-mj-1627 TMD |
|---|---|

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR A SEARCH WARRANT FOR TWO U.S. POSTAL SERVICE PARCELS

Your Affiant, Derek Starliper, United States Postal Inspector, Linthicum Heights, MD, being duly sworn, hereby deposes and states as follows:

I.     **Subject Parcels.**

1.     This is an Affidavit submitted in support of an Application for a Search Warrant for two (2) U.S. Mail Parcels, hereinafter "Subject Parcels." The Subject Parcels are currently located at the Maryland State Police Barrack Hagerstown, Maryland. The Subject Parcels are specifically identified as follows:

| Subject Parcel | Express (E), Priority (P), or (F) First Class and Tracking ID Number | From: Name and Address | To: Name and Address |
|---|---|---|---|
| 1. | (P) 9505 5152 6611 1138 7314 00 | SGA 6304 Los Osos, CA 93412 | Vinnie Allia 11305 Manse Road Hagerstown, MD 21740 |
| 2. | (P) 9505 5156 2206 1144 5257 10 | Stephanie Joy 4586 Glines Ave Santa Maria, CA 93455 | Kourtney Kochera 11305 Manse Road Hagerstown, MD 21740 |

## II.     Affiant's Training and Experience

2.     I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrest for, offenses enumerated in Section 2516 of Title 18, United States Code.

3.     I have been a postal inspector since October 2018, and I am currently assigned to the Maryland Narcotics Team.  In this role, I routinely investigate the use of the United States mail to ship narcotics and proceeds from the sale and distribution of narcotics to and from the Baltimore/Washington area from source states.

4.     During my employment with law enforcement, I have investigated and assisted in the investigation of numerous narcotics violations, including those that have led to the arrest of narcotics dealers.  In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; supporting undercover operations; arranging consensual monitoring and recording of telephonic and non-telephonic communications; analyzing telephone pen register and caller identification data; and executing search warrants that have led to substantial seizure of narcotics, firearms, and other contraband.  I have also applied for federal wire and electronic intercepts; listened to court authorized intercepted telephone calls between individuals involved or suspected to be involved in drug trafficking activities; reviewed court-authorized text message interceptions; and interpreted court-authorized intercepted calls and text messages.

5.     In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of narcotics, the laundering of proceeds derived

from the sale of narcotics, and the organization of drug conspiracies. Based on my experience, I know that drug trafficking organizations ("DTOs") utilize the U.S. Mail as a means of transporting drugs and proceeds from the sale of drugs to and from members of the DTO.

6. Based upon my training and experience in the field of narcotic interdiction through the mail, I know that there are suspicious characteristics common to many packages that contain narcotics, controlled substances or the proceeds thereof (i.e., U.S. currency). These factors, more fully detailed below, are used to identify packages requiring further investigation. In the case of this search warrant, several of these factors were identified, and the packages were alerted to by a drug detection canine. The most common factors or suspicious characteristics routinely observed in the course of screening packages are as follows:

    a. *Contrasts observed between legitimate business parcels and drug parcels*: As an alternative to First Class Mail (which does not provide a customer with the capability to track the progress of a parcel through the system), the U.S. Postal Service offers Priority Mail Express and Priority Mail. Priority Mail Express is guaranteed (money back) to be delivered on a set date and time, usually overnight. (That deadline is determined at the time of mailing.) The customer receives a receipt with this guaranteed information, and the sender can opt for a signature requirement at the other end or not. Customers can track the parcel online by its distinct Priority Mail Express tracking number. The weight of the package and the distance traveled are the two main factors in setting the price. Priority Mail Express costs more than Priority Mail. Priority Mail has a delivery service standard of 1-3 business days, but delivery within that time period is not guaranteed. Priority Mail is a less expensive alternative to Priority Mail Express, but still provides the ability to track a parcel. Legitimate businesses using Priority Mail Express typically

Case 1:21-mj-01627-TMD   Document 3   Filed 06/15/21   Page 4 of 10

1:21-mj-1627 TMD

have a business or corporate account visible on the mailing label, which covers the cost of the mailing. In contrast, the drug distributor will pay for the cost of mailing the package at the counter by using cash or a credit card. Business Priority Mail Express parcels typically weigh no more than 8 ounces, and business Priority Mail parcels typically weigh no more than 2 pounds. Drug packages typically exceed these weights. Address labels on business parcels are typically typed, whereas those on drug packages are typically handwritten. In your Affiant's experience, it is fairly easy to separate out smaller parcels, which constitute 70% to 80% of all Priority Mail Express and Priority Mail parcels, from other, heavier parcels. Typically, drug traffickers use Priority Mail Express, and will opt out of the requirement of obtaining a signature upon delivery.

   b. *Invalid Sender/Return Address*: When drugs are shipped through the mail, the senders generally do not want them back. To distance themselves from parcels containing drugs, often the return addresses and the names of senders are fictitious or false. A fictitious or false address is anything from an incorrect zip code, to a non-existent house number or street. The name of the sender is also typically invalid in one of several ways. Your Affiant has seen packages sent by persons with names of celebrities, cartoon characters, or fictional names. More often a search of a law enforcement database reflects that there is no association between the name of the sender and the address provided.

   c. *Invalid Recipient/Address*: It would be counter-productive to put the wrong receiving address on a package, but often the named recipient is not actually associated with the receiving address. This allows the person receiving the package to claim that they did not know about its contents. Sometimes drug packages are addressed to vacant properties with the expectation that the postal carrier will just leave it at the address. The intended recipient will then retrieve it from that location and hope to remain anonymous.

    d. *Location of Sender*:  The fact that a package is sent from a narcotics source state such as Arizona, California, Texas, Washington, Colorado, Puerto Rico and Florida (among others) can also indicate that the parcel contains controlled substances.

    e. *Smell*:  The odor of cocaine, marijuana, and methamphetamine are distinct, and through experience postal inspectors are familiar with these odors.  On occasion, a parcel will emit an odor that is easily recognized without the assistance of a canine.  Other smells that suggest that a parcel may contain narcotics include the aroma of masking agents.  Common masking agents used in an attempt to thwart detection by law enforcement and canines typically include dryer sheets, coffee, mustard, and any other substance that releases a strong smell.

    f. *Heavy Taping*:  Heavily taped parcels are another factor that will suggest a drug parcel, because narcotics parcels are heavily taped in an effort to keep the smell inside and to forestall easy checking on the interior contents by lifting up a flap.  For this reason, your Affiant has also observed excessive glue on the flaps of narcotics parcels as well.

    g. *Click-N-Ship*: The U.S. Postal Service created Click-N-Ship as a service for frequent mailers and businesses who prefer printing address labels and purchasing postage from their residence or business.  Drug traffickers create Click-N-Ship accounts as a means of giving a legitimate appearance to their drug mailings.  They create the accounts using fictitious account information and often provide pre-paid credit cards as a means of payment, which are difficult to track.  Drug traffickers often use legitimate business return addresses in states other than California and Arizona as a means to deter detection, as these other states are not usually considered "source" states for controlled substances.  The postage labels are printed/typed, unlike the typical drug related mailing label which is handwritten.

  7. It is your Affiant's experience that when these factors are observed, a drug detection

K-9 will likely "alert," next to the Subject Parcel, indicating that the dog has detected the presence of narcotics. As a result, these factors have become a reliable way to profile the parcels being shipped every day.

8. The facts contained in this Affidavit are based on my personal knowledge as well as that of other law enforcement personnel involved in this investigation. All observations that were not made personally by me were related to me by persons with knowledge. This Affidavit contains that information necessary to establish probable cause to support an application for a search warrant. This Affidavit is not intended to include each and every fact and matter observed by or made known to agents of the government.

**III. Probable Cause**

9. The Subject Parcels bear the following factors or suspicious characteristics associated with illicit content:

| Subject Parcel Express, Priority, or First Class | From Source State: | Weight: | Label: | Senders name associated with address? Yes / No | Recipients name associated with address? Yes / No | Canine Alert? |
|---|---|---|---|---|---|---|
| 1. Priority | Yes – CA | 3.2 ozs. | Handwritten | No | Yes | Yes – Reef[1] |
| 2. Priority | Yes – CA | 13.6 ozs. | Handwritten | Yes[2] | Yes | Yes – Reef |

10. On May 27, 2021, law enforcement used standard protocol for canine detection to

---

[1] The canine handler for "Reef" is Senior Maryland State Police Trooper Doug Deener. "Reef" was last certified in March 2021, and is trained on the odor of marijuana, cocaine, heroin, methamphetamine, and MDMA. Additionally, "Reef" receives monthly recurrent narcotics odor detection training.

[2] The sender name for Subject Parcel 2 is listed as "Stephanie Joy." A CLEAR database search associated "Stephanie Joy Lesinski" to the listed sender address.

Case 1:21-mj-01627-TMD   Document 3   Filed 06/15/21   Page 7 of 10

1:21-mj-1627 TMD

determine whether there was probable cause that the Subject Parcels contained narcotics. Specifically, after being removed from the mail stream, the Subject Parcels were individually placed in a secure area next to several other empty and unused boxes. At that time, a certified drug detection canine, "Reef," was brought forward to scan the group of boxes, which included the individual Subject Parcel and the empty and unused boxes placed around the Subject Parcel. The handler observed the canine and informed Inspector Starliper that "Reef" alerted to the presence of narcotics in the Subject Parcel. This process was repeated for each Subject Parcel. As indicated in the chart, the certified drug detection canine ("Reef") alerted to the presence of CDS in all Subject Parcels.

## VI. Conclusion

11. Your Affiant submits that based upon the above indicators reflected in the Subject Parcels described herein, based upon my training and experience, and based upon the alert of a certified drug detection canine on the Subject Parcel, I believe that there is probable cause that the above-described Subject Parcels contain narcotics or controlled substances, or the proceeds thereof (i.e. U.S. currency) and/or materials relating to the distribution of controlled substances through the U.S. Mail.

Respectfully submitted,

*Derek Starliper*
Derek Starliper
United States Postal Inspector

1:21-mj-1627 TMD

This Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 41(d)(3) this ___ day of June 2021.

_____
The Honorable Thomas M. DiGirolamo
United States Magistrate Judge

# ATTACHMENT A

## DESCRIPTION OF SUBJECT PARCELS TO BE SEARCHED

| *Subject Parcel* | *Express (E), Priority (P), or (F) First Class and Tracking ID Number* | *From: Name and Address* | *To: Name and Address* |
|---|---|---|---|
| 1. | (P) 9505 5152 6611 1138 7314 00 | SGA 6304 Los Osos, CA 93412 | Vinnie Allia 11035 Manse Road Hagerstown, MD 21740 |
| 2. | (P) 9505 5156 2206 1144 5257 10 | Stephanie Joy 4586 Glines Ave Santa Maria, CA 93455 | Kourtney Kochera 11305 Manse Road Hagerstown, MD 21740 |

These Subject Parcels are currently located at the Maryland State Police Barrack Hagerstown, Maryland.

1:21-mj-1627 TMD

## ATTACHMENT B:

## DESCRIPTION OF ITEMS TO BE SEIZED

All records and information that constitute fruits, evidence, and instrumentalities of violations of 21 U.S.C. §§ 841 and 846, and 21 U.S.C. § 843(b), including but not limited to:

a. Narcotics or other controlled substances;

b. Narcotics trafficking paraphernalia;

c. United States currency or other financial instruments;

d. Records related to narcotics suppliers, customers, and co-conspirators, and related identifying information;

e. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

f. Any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information); and

g. Indicia of possession, custody, or control, including any information related to the use of false or fraudulent identities